83

Receipt Number
569786

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DARNELL MISSOURI,
        Petitioner,

v

THOMAS BIRKETT,
        Respondent.

Case: 2:08-cv-11660
Judge: Cleland, Robert H
MJ: Scheer, Donald A
Filed: 04-18-2008 At 03:15 PM
HC MISSOURI V BIRKETT (EW)

PETITION FOR WRIT OF HABEAS CORPUS

NOW COMES, Darnell Missouri, Petitioner In Pro Se, and pursuant to the provisions of title 28 U.S.C. § 2254 and the AEDPA [Pub. L. No. 104-132, 110 Stat. 1214] of 1996, hereby petitions this Honorable Court for an order granting relief from his state court convictions obtained in violation of his federal constitutional rights. Petitioner supports his petition for habeas corpus relief on the following grounds:

1. This court has jurisdiction to review the claims alleged in the petition for relief under the provision of **Title 28 U.S.C. § 2254**, and the **[AEDPA]**, of 1996. Additionally, this Court is vested with inherent judicial authority to hear all claims arising under the constitution of the United States.

2. The state's final order of denial was rendered on July 26, 2005, on direct appeal, and January 9, 2008 for a 6.500 motion for relief from judgment. The decisions was the result of Michigan Supreme Court application for leave to appeal, under docket entry #128891 and #134355. The orders denying relief, in standard form, without any articulation on the merits of the federal constitutional questions presented is attached. [See Michigan Supreme Court Orders attached as: Appendix-A].

3. Petitioner is currently confined under the supervision of the Michigan Department of Corrections (hereafter "MDOC") at a facility located

1.

which stands for the proposition that a habeas court can grant relief if it finds the state court's resolution on the federal constitutional claims involved to be an unreasonable application of, or was contrary to, clearly established law, as decided by the supreme court of the United States.

12. Petitioner asserts that he is being held illegally and unconstitutionally by respondent, Warden Thomas Birkett, at the Standish Correctional Facility; in violation of his federal constitutional rights.

13. Petitioner avers that the facts supporting his illegal confinement under respondent's un-constitutional authority are premised on the facts as set forth in this petition and trial transcripts. The claims supporting this petition for habeas corpus relief are:

**WHEREFORE**, petitioner prays that this Court grant him all relief to which he may be entitled in this proceeding.

_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: ___/___/2008

_____

**ISSUE I.**

> THE CUMULATIVE EFFECT OF THE PROSECUTOR'S
> MISCONDUCT DENIED PETITIONER HIS STATE AND
> FEDERAL RIGHTS TO A FAIR TRIAL.

A: Without benefit of pre-trial notice and the rational for
   admission, the prosecutor repeatedly injected prejudicial
   other-acts evidence and innuendo.

B: The prosecutor improperly vouched for the credibility of
   prosecution witness (Gilliam) and (Gaines).

> THE MICHIGAN COURT OF APPEALS RENDERED ITS DECISION
> THAT WAS AN UNREASONABLE APPLICATION OF UNITED STATES
> SUPREME COURT PRECEDENT DENYING RELIEF WHERE PETITIONER
> FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WAS VIOLATED.

Factual Pleading:

The prosecutor repeatedly injected prejudicial other-acts evidence
and innuendo throughout the trial. While the evidence was not logically or
legally relevant to the charged offense, it tended to establish that
petitioner was a lawbreaker and a person of bad character. While
cross-examining (Chanta Paul), the prosecutor improperly elicited other-acts
evidence as follows:

Q. You knew Darnell Missouri because you bought crack from him, isn't
   that correct?

A. That's correct. [See, TT. pg. 101, 9/3/03].

Q. But you bought crack from both [Missouri and Uche] of them?

A. Yes. [See, TT. pg. 102, 9/3/03].

Similarly, the prosecutor asked Ms. Avington-Johnson the following
questions:

Q. You also know Mr. Missouri to sell drugs, correct?

A. I mean, he might, yeah.

Q. He might or you know he does. [See, TT. pg. 138, 9/3/03].

In closing the prosecutor told the jury:

I think the testimony of Clifford Gilliam is quite clear. He knows

1.

Darnell Missouri's face. He's seen it in his neighborhood trying to sell drugs up and down the blocks for months. (TT. pg. 145, 9/3/03).

Here the prosecutor did not give a proper notice or purpose of intent to admit other-acts evidence and provide the rationale for admission.(See, Appendix-F, Lower Ct. File & Docket Entries). In closing argument, the prosecutor improperly vouched for the prosecution witnesses, when the prosecutor told the jury:

"I believe Clifford Gilliam and Frank Gaines testified credibly". (TT. pg. 152, 9/3/03). Here the (M.C.O.A.) decision was unreasonable. (See, Appendix-A, Mich. Ct. of App. decision). Where the court made assumptions that the record does not support. When the prosecutor never properly presented a notice or purpose for the other-acts evidence, (See, Appendix-F, Lower Ct. Docket entries). The trial court never determined, the purpose of the other-acts evidence. Nor was there any evidence adduced at trial to support that the defense witness had a special interest in Petitioner acquittal in exchange for the acquiring of drugs.

Furthermore, the Michigan Court of Appeals was unreasonable where it decided that the prosecutor argument was appropriate, and did not ask the jury to convict based on the prosecutor's special knowledge was erroneous, where the prosecutor did not argue credibility based on the record only, but based the credibility on her personal opinion and reputation of her government office.

Here the petitioner submits that the prosecutor's injections of prejudicial other-acts evidence, and improper vouching cannot be deemed harmless. Where the people's case heavily relied on complainant Clifford Gilliam and Frank Gaines. However, the testimony of Chanta Paul cast serious doubt on Gilliam's eye-witness identification of Darnell Missouri. Ms. Paul

testified that Gillian had consumed two pints of liquor and smoked crack cocaine shortly before the incident. (TT. pgs. 22-27, 9/3/03). While Mr. Gillian even admitted to drinking some beer. (TT. pg. 37, 9/3/03). Clearly, the ingestion of these intoxicants adversely impacted his ability to perceive and recall these startling events in the darkness of night. There was also serious doubt to the accuracy of Frank Caines eyewitness identification, while admitting that his house was surrounded by trees, bushes and a fence, he claimed to have seen Mr. Missouri's face from his porch, at a distance of 45 to 50 feet away. (TT. pg. 50, 9/3/03).

On the other hand, Chanta Paul testified that the perpetrator's name was (Oche) and that Darnell Missouri petitioner was not the perpetrator. (TT. pgs. 95, 99, 102, 9/3/03). In addition, Ms. Avington-Johnson provided alibi testimony on defendant's behalf. (TT. pgs. 120-121, 125-126, 9/3/03). As such evidence against petitioner was not strong. Given all the circumstances anything that affected the credibility of Gillian and Caines could have tipped the scales. Here this issue cannot be deemed harmless.

**ISSUE II.**

> THE TRIAL COURT COMMITTED EVIDENTIARY ERROR INFRINGING
> THE FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS, WHEN IT
> ADMITTED OTHER-ACTS EVIDENCE, OVER DEFENSE OBJECTION,
> BEFORE DETERMINING THAT THE EVIDENCE WAS RELEVANT AND
> NOT UNDULY PREJUDICIAL.

> THE MICHIGAN COURT OF APPEALS RENDERED ITS DECISION
> THAT WAS AN UNREASONABLE APPLICATION OF UNITED STATES
> SUPREME COURT PRECEDENT DENYING RELIEF WHERE PETITIONER
> FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WAS VIOLATED.

Factual Pleading:

Over defense objection, the trial court admitted other-acts evidence,

before determining that the evidence was relevant, and not unduly prejudicial.

During the prosecutor's examination of Frank Gaines, trial counsel moved

to strike the witness non-responsive injection of bad acts evidence.

> Q. Mr. Gaines, did you know this individual's name, the defendant?

> A. No. I saw him in the area when I first notice him, he was breaking
>    in a house 1960 Highland and I was coming down the alley.

> Q. Was this the day of April 27th?

> A. No. No. That was a couple weeks before then.

Mr. Taratuta: Judge, I move to strike that testimony.

The Court: On what grounds?

Mr. Taratuta: On the grounds that its not relevant to the case that were
              hearing right now, and is prejudicial to the defendant.

The Court: Overrule.....; (See, TT. pgs. 58-59, 9/3/03).

Again, the prosecutor asked Ms. Avington-Johnson the following

questions:

> Q. You also know Mr. Missouri to sell drugs correct correct?

> A. I mean, he might, yeah.

> Q. He might or you know he does.

Mr. Taratuta: Judge, again, this is irrelevant and this is prejudicial.

The Court: Overrule.

Q. Yes?

A. Yes he does. (See, TT. pg. 138, 9/3/03).

Here there was nothing to connect the horrendously prejudicial act of drug dealing and burglary to the offense complained. However, the (M.C.O.A.) acknowledge that the prosecutor conceded that the bad acts evidence should not have been admitted, but the court of appeals deemed the error harmless considering the strength of the eyewitness testimony, was unreasonable due to the grounds of the issues of the unduly suggestive identification of Mr. Gilliam, Mr. Gaines, and the ineffective assistance of counsel claim, for failure to call an expert witness on identification and failure to request an instruction on the grave danger of misidentifications, outline in this petition will show that the eyewitness testimony of prosecutions witness could not be deemed reliable or harmless. (See, Michigan Court of Appeals decision Appendix-A).

## ISSUE III.

### INEFFECTIVE ASSISTANCE OF COUNSEL DENIED PETITIONER A FAIR TRIAL

A. Trial counsel failed to object to the improper injection of other -acts evidence.

B. Trial counsel failed to seek the appointment of an expert on identification, or a cautionary  instruction on the grave dangers of mis-identification.

C. Trial counsel failed to timely and properly object to the prosecution's misconduct raised in claim I., of this petition.

### THE MICHIGAN COURT OF APPEALS RENDERED ITS DECISION THAT WAS AN UNREASONABLE APPLICATION OF UNITED STATES SUPREME COURT PRECEDENT DENYING RELIEF WHERE PETITIONER SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO A FAIR TRIAL WAS VIOLATED.

Factual Pleading:

Trial counsel was ineffective for failing to preserve the record. For the most part, trial counsel did not object, did not move to strike, and did not request an immediate cautionary instruction when bad-acts evidence was elicited at trial.

Q. So, you didn't know the Defendant's name on April 27th?

A. No. I didn't.

Q. How many times would you say you've seen him in the neighborhood since the time you first saw him up until the 27th of April?

A. Every time I come home its a big shed crate sitting in front of my house, and I saw him there dealing drugs about 10 or 15 times or more. (See, TT. pgs. 58-59, 9/3/03).

Q. That's the only time you really seen her [Chanta]?

A. Well, no I've seen him [Missouri] and her [Chanta] up and down the street.

Q. Did they live in the house on Highland?

A. No. The house next to Clifford, they broke in that house and when they were going to set up selling drugs in that house...(See, TT. pg. 67, 9/3/03).

Q. Did it appear to you that they [Missouri] and [Chanta] had some

kind of relationship?

A. Well, I really didn't know and really didn't care. I just didn't
want them selling drugs in front of my house. I didn't know what
they had. (See, TT. pg. 73, 9/3/03).

Here trial counsel failed to conduct a sound strategy, where no sound
trial strategy could include advising the jury that the defendant was engaged
in illegal narcotics sales and burglary. The trial counsel failed to object,
failed to move to strike and failed to request an immediate cautionary
instruction when the other bad-acts evidence was presented to the jury. He
also failed to request that the court issue a stern admonition that witness
should only answer the questions put to him.

Here this court should not struggle to find some tactical reason to
justify counsel's conduct, when trial counsel failed to reasonably implement
his own strategy. During closing argument trial counsel told the jury to
disregard the other-acts evidence. (TT. pg. 162, 9/3/03).

Trial counsel failed to present his strategic defense reasonably and
completely, where trial counsel argued that the other-acts evidence was
prejudicial, but failed in his duty to completely protect the record from
improper infusion.

Next, the [M.C.O.A.] was unreasonable to render that counsel decision
to not seek an expert in eyewitness testimony was reasonable trial strategy
was erroneous, where the central issue in this case was identification and
trial counsel conceded that identification was at issue in this case. (TT.
pg. 117, 9/2/03). There was serious reasons to question the accuracy of the
identification given by Clifford Gilliam and Frank Gaines. As to Clifford
Gilliam, Chanta Paul testified that he had consumed two pints of liquor and
smoked crack cocaine shortly before the incident. (TT. pgs. 37, 93-97,
9/3/03). Clearly the ingestion of these intoxicants adversely impacted his

ability to perceive and recall these startling events in the dark of night. There was also serious doubt as to the accuracy of Frank Gaines eyewitness identification.

While admitting that his house was surrounded by trees, bushes and a fence, he claimed to have seen petitioner's face from his porch at a distance of 45 to 50 feet away. (TT. pg. 60, 9/3/03). The court of appeals in its decision rendered that failure to call an expert was reasonable trial strategy, was erroneous where trial counsel put up an attempt to challenge the accuracy of the eyewitness identification testimony (TT. pgs. 156-159, 9/3/03), but yet failed to call an expert on identification in which was central to the case in which he conceded.

However, at a minimum trial counsel should have requested a detailed instruction. The court of appeals decision that the witness was familiar with the defendant and his own witness told the police that the defendant did the shooting was erroneous where Gilliam identification was based on being tipped-off by persons to whom his assailant was, (Pre. Lim. Ex. pgs. 20, 33-34, 5/15/03)(TT. pgs. 26-30, 46, 47, 9/3/03)(See, Appendix-J, Mr. Gilliam Police Report). Moreover, Mr. Gaines could not be considered familiar with the assailant where he did not give a name or description of the perpetrator. (TT. pgs. 65-66, 9/3/03). However in reference to Ms. Paul gave testimony recanting that the defendant was the shooter, that she was scared and that the police would not take her home unless she gave them a name. So she embellished her name as "Ms. Laps", as well as Mr. Missouri's name because that was all she could think of. (TT. pgs. 101-106, 111-112, 9/3/03)(TT. pgs. 75, 105, 9/3/03).

Lastly, the trial counsel failed to timely and properly objected to the prosecution's misconduct raised in issue I., as set forth in this

petition. Here the centrality of this case was identification in which the prosecutor conceded and there was an utter absence of physical evidence. (TT. pg. 62, 9/2/03)(TT. pg. 163, 9/3/03).

This issue concerning counsel ineffectiveness cannot be deemed harmless. (See, M.C.O.A. decision Appendix-A).

ISSUE IV.

> PETITIONER CONVICTION AND SENTENCE MUST BE VACATED, DUE
> TO IMPROPERLY AND UNDULY SUGGESTIVE IDENTIFICATION WERE
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE THE COURT
> TO SUPPRESS THE IDENTIFICATION PRIOR TO PETITIONER'S TRIAL.

> THE TRIAL COURT WAS IN ERROR WHEN IT FAILED TO RENDER A DECISION
> ON THE SUGGESTIVENESS OF THE IDENTIFICATION, STATING THAT THE ISSUE
> WAS RAISED ON DIRECT APPEAL, WAS UNREASONABLE AND CLEARLY ERRONEOUS,
> WHEN IN FACT PETITIONER NEVER RAISED THIS ISSUE ON DIRECT APPEAL.
> PETITIONER'S ISSUES RAISED BY APPELLATE COUNSEL, ON DIRECT APPEAL,
> AND THOSE RAISED IN PETITIONER'S 6.500 MOTION ARE FACTUALLY DIFFERENT.
> (See, M.C.R.A. Decision Appendix-A & Trial Court Decision Appendix-B).
> THE TRIAL COURT'S RULING ON THIS ISSUE WAS UNREASONABLE AND A
> VIOLATION OF PETITIONER'S DUE AND PROTECTED SUBSTANTIVE RIGHTS.

Factual Pleading:

Here the petitioner submits that the complainant's pre-trial and in-court identification was clearly tainted and suggestive. During the course of trial the complainant Clifford Gilliam testified regarding the pre-trial identification procedure where he was shown the petitioner in back of a police car. (Pre. Lim. Tk. pg. 34-41, 5/15/03)(TT. pgs. 26-32, 9/3/03). Also witness Frank Gaines who identified the defendant for the first time at trial without any prior identification. (TT. pgs. 35-36, 9/3/03).

Petitioner asserts that the identification of Mr. Gilliam and Gaines cannot be deemed reliable due to the facts of the record.

**Mr. Gilliam:** testified he saw fire come from the gun, and then stated he didn't see fire coming from the gun. (Pre. Lim. Tk. pg. 32, 5/15/03). Moreover, he claimed to have seen a gun, then said he didn't see a gun. (Pre. Lim. Tk. pg. 30, 5/15/03)(TT. pgs. 13, 32, 44, 9/3/03). Mr. Gilliam also testified he was under the influence of alcohol, and Ms. Paul also testified she smoke crack with Gilliam and that he was highly intoxicated. (TT. pgs. 16-37, 94, 95, 9/3/03). Mr. Gilliam further testified that he identified Mr. Missouri (petitioner) 5-days later when "somebody tip him off", to who the person was that shot at his house. (TT. pgs. 25-30, 42, 46, 47, 9/3/03)(Pre. Lim. Tk. pgs. 30, 33-34, 5/15/03)(See, Appendix-C, Gilliam Police Report).

**Mr. Gaines:** stated he didn't know the defendant by name, nor where he lives. (TT. pgs. 58, 66-67, 9/3/03). Gaines said he observed the incident in his study, even though it was night and 45 to 50 feet away from Gillian's house. (TT. pg. 64, 9/3/03). Mr. Gaines stated also that he did not have his glasses on that night that he observed the incident. (TT. pgs. 69, 70, 9/3/03). Gaines further stated no one could see him looking, because his house is surrounded by trees, bushes, and fences that were in his way when he was observing the incident. (TT. pg. 68, 9/3/03). Gaines did not give a name or description of the assailant. (See, Appendix-H Police Report). Mr. Gaines identified Mr. Missouri four months later during trial. (TT. pgs. 65, 66, 9/3/03).

The fact is, under this particular factor is that the testimony of complainant Clifford Gillian will prove Frank Gaines lied and embellished his whereabouts to give the impression that he observed the offense. Mr. Gilliam gave testimony of distinctive events that were allegedly carried out in the offense. Gillian testified that the assailant knock on his door. (TT. pg. 8, 9/3/03). When Gilliam would not let the assailant in, thats when the assailant threw a chair through the window. (TT. pg. 10, 9/3/03). The assailant then started shooting the window out. (TT. pgs. 14-17, 9/3/03).

Mr. Gaines testified that he "overheard" shooting while in his study (TT. pgs. 57, 68-69, 9/3/03), which summoned him to come on his porch to look out. (TT. pg. 68, 9/3/03). Which he claimed to see the assailant at the door and saw him break out the window and shoot again. (TT. pg. 69, 9/3/03). Gilliam testified the shooting that occurred was after the window was broken with a chair.

The fact that Gaines claims to "overheard" the shooting while in his study only proves that he couldn't see the assailant at the door, or the

alleged breaking of the window. Here Mr. Gaines cannot be truthful of observing the offense.

**Ms. Paul:** was called by the defense, who stated she smoke crack cocaine with Gilliam and stated she gave the police a false name Darnell Missouri because she was scared. (TT. pgs. 101-106, 111-112, 9/3/03). She also gave the police a false name for herself, that Darnell Missouri and "Shanta Laps" were the only names she could think of. (TT. pgs. 75, 105, 9/3/03).

Ms. Paul testified Mr. Missouri was not the assailant (TT. pg 112, 9/3/03), and that her name was not Shanta Laps. (See, Police Report Appendix-I).

Taking all these factors into consideration, Gilliam being under the influence of drugs and alcohol never identified the defendant until he was "tip" off by someone as to who Mr. Missouri was. Gilliam conflicting version on important facts, such as seeing the gun, and not seeing a gun was clearly tainted on those facts alone. Gaines not wearing his glasses and was 45 to 50 feet away from the incident and admitted that his view was obstructed by trees, bushes, and fences shows Gaines identification untrustworthy and cannot be reliable therefore, must be suppressed. Gilliam conditions at the time effected his ability to identify anyone and being mistaken on crucial details that could have change this case all the way around, cannot be deemed reliable.

Here the prosecutor acknowledge that the centrality of this case was identity as there was an utter absence of physical evidence. (TT. pg. 62, 9/2/03)(TT. pg. 168, 9/3/03). This issue cannot be deemed harmless.

ISSUE V.

> PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF
> COUNSEL UNDER THE SIXTH AMENDMENT UNDER STATE AND FEDERAL
> CONSTITUTION, WHEN COUNSEL FAILED TO OBJECT TO THE IN-COURT
> IDENTIFICATION AS WELL AS FILING A MOTION TO SUPPRESS.

Factual Pleading:

The trial court was unreasonable when it made the error by failing to render a decision on ineffective assistance of counsel to object and suppress the identification. Claiming that the issue was raised on appeal, was a clearly factual erroneous and unreasonable determination. When in fact petitioner never raised such issue on direct appeal. Those issues raised by appellate counsel and those by petitioner in his 6.500 motion are factually different. (See, M.C.O.A. decision, Appendix-A), and (Trial Ct. decision Appendix-C). Here the trial court failed to rule on this issue in which is a violation of petitioner's Sixth Amendment Right.

The petitioner submits that due to the violation of issue-4 outline in this petition that counsel was ineffective to request a **Wade Hearing**, to suppress any in-court identification, when counsel knew that identification was at issue. The petitioner lawyer at preliminary examination filed a motion to have the identification suppress, based on the improper procedures that was done by the City of Detroit Police. (Pre. Lim. Ex. pgs. 40-41, 5/15/03). New counsel was appointed and new counsel failed to investigate and follow up on this identification issue. The record is sufficient to support the claim of ineffective assistance of counsel, and counsel action cannot be deemed trial strategy, or harmless.

ISSUE VI.

> THE PROSECUTOR COMMITTED REVERSIBLE ERROR BY ALLOWING THE
> PROSECUTOR'S WITNESS TO TESTIFY THAT HOLES "APPEARED"
> TO BE BULLET HOLES WHEN THERE WAS NO EVIDENCE TO SUPPORT SUCH
> THEORY AS WELL AS ARGUING TO THE JURY THAT THIS WAS THE TRUTH
> AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.

The trial court was unreasonable when it made the error by failing to render a decision on the prosecutor's misconduct. Claiming that the issue was raised on appeal, was a clearly factual erroneous and unreasonable determination. When in fact petitioner never raised such issue on direct appeal. Those issues raised by appellate counsel and those by petitioner in his 6.500 motion are plainly different. (See, M.C.O.A. decision, Appendix-A), and (Trial Ct. decision Appendix-C). Here the trial court failed to rule on this issue in which is a violation of petitioner's Fourteenth Amendment Rights.

During direct examination officer John Burris was ask what he observed as to the complainant's home, Officer Burris clearly stated:

Q. Did you make observation as to the house itself?

A. Yes, I observed the front window of the house to be broken out. "Appeared" to be a gun shot in the glass...plastic that goes over the window, it also "looked like" it had a hole in there was also a hole in the door frame of the addressed.

Q. Are you speaking about in terms of a door, a hole itself or what "Appeared" to be a gunshot. (TT. pg. 78, 9/3/03).

In closing arguments the prosecutor relied on Officer Burris testimony as factual:

**Prosecutor:**

and he took out that gun and we know it was a gun because the gun shot evidence is clear the officers testified to seeing it. (TT. pgs. 143, 144, 9/3/03).

We have the testimony from both Mr. Gilliam and the police officers. They saw the bullet holes that pierce the window and the door. (TT. pg. 150, 9/3/03).

You have the testimony of Clifford Gillian that, in fact...as well
as Frank Gaines, as well as the officers who originally responded to
the scene that there was damage done to the home. You have testimony
of Frank Gaines and Clifford Gillian that the defendant was the person
who instigated and cause the damage to that home. (TT. pg. 151, 9/3/03).

Here the prosecutor argued to the jury something that she knew was
not true. The prosecutor argued throughout its closing arguments that the
holes were from a gun, when the prosecutor knew there was no evidence to
support that conclusion. The prosecutor had a copy of Officer Burris police
report as well as the investigating detective report, who both clearly mark
down there was no evidence found. (See, Appendix-I).

The prosecutor treated the testimony of its witness as it was completely
true, and urging the jury to believe what "appeared" or "looked" to be
evidence as factual while Mr. Burris police report is completely void of
any observation of evidence. Counsel was ineffective for failing to object
or cross-examine Mr. Burris to the accuracy of what "appeared" or "looked"
to be evidence with reference to his report being completely absent of his
testimonial observation of the evidence.

Here counsel failed to present a defense that may have discredit the
prosecutor case, and at most change the outcome of trial, where counsel could
have presented the jury with evidence that what "appeared" or "looked" to
be bullet holes was not actual bullet holes, or at best challenged if the
house was ever shot at, due to the fact that the police report states no
evidence found.

The circumstances of this case this issue cannot be deemed harmless.

ISSUE VII.

> PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL,
> IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES
> CONSTITUTION WHEN COUNSEL FAILED TO OBTAIN ADEQUATE PRE-
> TRIAL INVESTIGATION.

The trial court erred when it failed to render a decision on the ineffective assistance of counsel, claiming that the issue was raised on direct appeal was unreasonable and clearly erroneous. When in fact petitioner never raised such issue on direct appeal. The issues raised on 6.500 motion are plainly different. (See, "I.V.I.", Decision Appendix-A) and (Trial Ct. Decision Appendix-C). Here the trial court failed to rule on this issue in which is unreasonable and a violation of petitioner Sixth Amendment Rights.

Factual Pleading:

Trial counsel was ineffective for failing to ask the trial court for an investigator to investigate the scene to determine whether any actual bullet holes, casing and damage was done to the house. Counsel knew, considering the fact that the officer police report stated that there was no physical evidence found, while on the contrary giving testimony of what "appeared" or "looked" to be holes. (TT. p. 70, 2/3/03)(See, Police Report Appendix-I).

This officer was bias and petitioner needed a impartial investigation done. Counsel had evidence that the information and reports had showed no evidence being found, or preserved, counsel should have had the scene reconstructed, when one consider the fact, throughout trial identification and intent was at issue.

The prosecutor argued the defendant had the intent to kill, because he shot directly toward the window and door. (TT. pgs. 14-17, 2/3/03). The investigation could have aided the jury to determine intent. The evidence could have shown all the bullets were shot into the floor or any bullets holes found at all. A rationale view of the evidence if collected could easily support a conclusion that the complaint's assailant intended to damage the house as the complainant testified to, the assailant shot out the window

and at the door. (TT. pgs. 14-17, 2/3/93).

The jury was only left with the prosecutor theory as to how the bullets were shot. Where intent and a absence of any physical evidence was at issue, trial counsel actions cannot be deemed harmless for his ineffectiveness.

**ISSUE VIII.**

> PETITIONER CONVICTION FOR ASSAULT WITH INTENT TO
> COMMIT MURDER MUST BE VACATED WHERE THE DISTRICT
> COURT ABUSED ITS DISCRETION BY FINDING PETITIONER OVER
> FOR TRIAL, WHERE THE PROSECUTOR DID NOT INTRODUCE
> SUFFICIENT EVIDENCE THAT PETITIONER ACTUALLY SHOT AT THE VICTIM.

The trial court rendered its decision that was an unreasonable application of United States Supreme Court Precedent, denying relief where petitioner's fourteenth amendment rights was violated.

<u>Factual Pleading:</u>

During the course of trial the victim testified that a man came to his home asking to speak to a lady name Chanta. Gillian did not let the man in, he told him to wait a minute, I don't know if she is here or not. (TT. pgs. 9-10, 9/3/03). The man said, "I'm coming in this bitch now". He then threw a chair, through the living room window. (TT. pg. 10, 9/3/03). The perpetrator put his head through the window, when Gillian picked up a baseball bat, and told him, don't come in here man, I don't want to crack you in the head with this bat. (TT. pgs. 11, 13, 9/3/03).

The man repeatedly said I'm coming in here and then backed back on to the porch and shot the window out. Gillian heard five or six gunshots in all, and saw the man as he fired the last shot into the door. (TT. pgs. 14-17, 9/3/03). Taking this testimony in light most favorable to the prosecution, Gillian never said that the perpetrator ■ever shot directly at him. Even though petitioner contends he was not responsible of this act and for arguments sake, the prosecution did not prove beyond a reasonable doubt that the actual perpetrator had the "specific intent" to kill Gillian.

The testimony revealed that the perpetrator initially came to speak to Chanta and not to confront Mr. Gillian. (TT. pg. 9, 9/3/03).

A strong fact to consider is that the perpetrator had never drawn a gun while attempting to enter Mr. Gillian's house, until the perpetrator

was confronted by Mr. Gillian with a baseball bat, sheds a little light that the perpetrator objective was to enter the house and not trying to assault the victim with a weapon. (TT. pgs. 9-14, 9/3/03). During preliminary examination and trial, Gillian was specifically ask where did his assailant shoot, and do he think the assailant was shooting at him. Gillian clearly testified with his assailant being 2-feet away that he was shooting at windows. (Pre. Lim. Ex. pgs. 14, 16, 17, 24, 25, 5/15/03)(TT. pgs. 14, 16, 28, 29, 9/3/03).

If you take the testimony of Mr. Gillian in the light in which he gave, that his assailant objective was to damage property, and not trying to kill Mr. Gillian. Gillian testified that after the shooting of the windows, the perpetrator broke a bedroom window, kitchen windows, and told Gillian that he would be back to burn his house down is testimony of property damage. (TT. pgs. 17, 18, 22, 9/3/03). During preliminary examination the prosecutor questioned Gillian concerning the shooting and Gillian clearly testified that the assailant was trying to shoot out windows.

> Q. When the defendant took his gun,
> I'm sorry pistol, his pistol,
> where exactly did he shoot.
>
> A. He shot the front door glass out,
> he shot the window glass out,
> the chair had already busted
> through the picture window, so
> he didn't have no reason to shoot
> that. (Pre. Lim. Ex. pg. 16,
> 5/15/03).

Here it is evident that there was no intent to kill Mr. Gillian, but damage property.

The district judge at petitioner's preliminary examination was very reluctant to bind petitioner over on the assault with intent to murder charge. (See, Pre. Lim. Ex. pgs. 44-47, 5/15/03).

**The Court:**

I'm comfortable with that, but I'm not comfortable -- I'm looking at the assault with intent to murder.

**Ms. Abdelnour [Prosecutor]:**

Your Honor, there's an individual home, there are numerous shots fired at the home while this person is present after the defendant had already attempted to enter into the home.

**The Court:**

So you're saying that the shots in and of itself is sufficient to bind over? Is there a case law for that?

**Ms. Abdelnour:**

Your Honor, I don't have a case law with me, if the court would give me a little time I....

**The Court:**

I mean, I'm just wondering about..maybe the court is being to technical, but, I mean, there's nothing requiring proximity?

**Ms. Abdelnour:**

No, Your Honor.

**The Court:**

So if someone shoots up in the air, they still can be charge with...

**Ms. Abdelnour:**

Your Honor, its a question of fact as to what, you know the intent was. We have a witness who is in a home, who is standing in front of his window, after it has already been broken into, and we have an individual firing directly into that. If, thats not a assault with into to murder, I dont really know what it is then. I think its more than a mere felonious assault. There are several shots fired directly into the home where this

individual was and where the defendant knew this individual was.

**Mr. Harris [Defense Attorney]:**

I think there has to be some testimony that he's intending to shot at him Judge, I dont think...

**Ms. Abdelnour:**

Your, Honor, if you drive by a house and you shoot at a house full of people, in front of a house full of people, standing in front of the house, is that not assault with intent to murder? I mean, if you're shooting at people directly. This is not one shot, this several shots.

**Mr. Harris:**

He testified he was shooting at the window.

**The Court:**

That's my problem that I'm having. The testimony that I heard from Mr. Gillian is that the defendant was aiming and shooting at the window. That's why I ask did he see him duck. Its different from trying to shoot some windows out, and trying to kill somebody, to come up and shoot and try to kill someone. There is a different between those two.

Here the District Court abused its discretion for binding the petitioner over on evidence that was lacking the intent element. Petitioner preserved the issue and raised said motion before trial court but was denied. (T. pgs. 3-7, 3/22/03). On 6.500 the trial court was unreasonable when it denied the petitioner in its (Opinion pg. 4)(See, Tr. Ct. decision Appendix-C).

When it concluded that the fact that defendant discharged his weapon in to the home at point blank range, shooting through the window and the door, is so reckless with extreme indifference to human life that intent can be extrapolated from defendant's conduct was erroneously egregious and unreasonable to basically conclude that the shots in its self was sufficient to prove intent.

ISSUE IX.

PETITIONER WAS DENIED HIS FEDERAL, CONSTITUTIONAL RIGHT TO
A JURY TRIAL BY SENTENCING PETITIONER ON THE BASIS OF
BEHAVIOR NOT PROVEN BEYOND A REASONABLE DOUBT TO THE JURY.

THE TRIAL COURT RENDERED ITS DECISION THAT WAS UNREASONABLE
APPLICATION OF UNITED STATES SUPREME COURT PRECEDENT, DENYING RELIEF
WHERE PETITIONER SIXTH AND FOURTEENTH AMENDMENT RIGHT WAS
VIOLATED.

Factual Pleading:

Here the trial court errored (s.i.c) when the court failed to score
the petitioner within the recommended range of accurately scored sentencing
guidelines. Petitioner raised separate objections to (O.V.'s 4, 6, and
9)(Sent. T. pgs. 4-7, 9/10/03). Under (O.V. 4), there was no evidence
introduced that the victim suffered any "psychological injuries" which
required professional treatment. (O.V. 6), was also scored (50 points) when
there was no evidence introduced that petitioner had pre-meditation to kill
anyone.

Petitioner should have only been scored (25 points) under this
particular (O.V.). Petitioner also objected to (O.V. 9). Ms. Paul testified
on behalf of the defense, and was no where in the area of the shooting,
clearly petitioner cannot be scored for 2-victims when there was only one
victim. The trial court errored (s.i.c.) when it decided to deny the
petitioner to accurate sentencing, by stating petitioner failed to object,
when petitoner clearly objected to the scoring. (RT. pgs. 4-7, 9/3/03)(See
Tr. Ct. decision Appendix-C).

The trial court also committed error by ordering petitioner to pay
restitution without following the procedures outlined in MCL 780.767 sec.
17. During trial the court ordered the petitioner to pay restitution in the
amount of ($1,600.00), sixteen-hundred dollars, based on the fact the victim
claimed that he suffered damages that amounted to that to fix his home. Here

the trial court relied on the testimony of the complaint. (T. pgs. 22-23, 9/19/03).

The complainant (s.i.c.) only testified to what it cost him to fix the damages to his home. However, there was no bills, or receipts of things he purchased to re-fix the damages. The pre-sentence report doesn't mention anything about cost, the complainant suffered from his home being damaged (See, Pre. Sent. Report Appendix-K). Here the court took only the complainant's word for it which is in direct conflict with MCL 780.767(17).

ISSUE X.

PETITIONER WAS DENIED A FAIR TRIAL CONSIDERING THE CUMULATIVE
EFFECT OF BOTH PROSECUTION MISCONDUCT AND INEFFECTIVE ASSISTANCE
OF COUNSEL.

THE TRIAL COURT ERRORED (s.i.c.) WHEN IT DID NOT RENDER A DECISION
ON THIS ISSUE, CLAIMING THAT THE ISSUE WAS RAISED ON DIRECT APPEAL WAS CLEARLY
ERRONEOUS. WHERE PETITIONER NEVER RAISED SUCH ISSUE. THE ISSUES RAISED BY
APPELLATE COUNSEL ON DIRECT APPEAL, AND THOSE RAISED BY PETITIONER ON 6.500
MOTION, IS PLAINLY DIFFERENT. (MICH. CT. APP. DECISION APPENDIX-A), (CIR,
CT. CT. DECISION APPENDIX-C). HERE THE TRIAL COURT FAILED TO RULE ON THE
ISSUE THAT IS IN VIOLATION OF PETITIONER'S SIXTH AND FOURTEENTH AMENDMENT
RIGHTS UNDER THE CONSTITUTION.

Factual Pleading:

Petitioner asserts that, even if each of these alleged errors
individually was insufficient to require reversal, taken the cumulatively
(s.i.c.) of these errors outlined in issues: 1, 3, 6, and 7 of this petition.
That the errors entitles defendant to a reversal of his conviction, where
number of minor errors may in some cases amount to error requiring reversal.
Here these were major errors that cannot be considered harmless in the
cumulative amount.

ISSUE XI.

PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL,
ON APPEAL, WHEN COUNSEL FAILED TO RAISE THE FOLLOWING ISSUES
OUTLINED IN PETITIONER'S PETITION.

THE TRIAL COURT RENDERED ITS DECISION THAT WAS AN UNREASONABLE
APPLICATION OF UNITED STATES SUPREME COURT PRECEDENT, DENYING RELIEF
WHERE PETITIONER'S SIXTH AMENDMENT RIGHTS WAS VIOLATED.

<u>Factual Pleading:</u>

Here appellate counsel was ineffective for failing to raise issue 4-
11 outlined in this petition. Where the issues that counsel failed to raise
by appellate counsel on appeal. Here it is clearly plain that appellate
counsel either ignored or failed to research the strong issues outline in
this petition.

ISSUE XII.

PETITIONER ASSERTS THE FACTS AND EVIDENCE PRESENTED IN
THE APPLICATION FOR WRIT OF HABEAS CORPUS ESTABLISHED A
CLAIM OF ACTUAL INNOCENCE.

Petitioner has demonstrated "cause and prejudice" where his actual innocence is in question, which constitutes a fundamental miscarriage of justice as he is actually innocent of the crimes for which he stands convicted. Schulp v Delo, 115 S.Ct. 851 (1995). Consequently, it is questionable as to whether a reasonable fact finder would have found petitioner guilty where there was an utter absence of any physical evidence against the petitioner. Where petitioner presented an alibi, and the fact that the petitioner's conviction resulted from irreparable and unduly suggestive identification outlined in this petition.

The prosecutor use of such impermissible identification testimony not as a minor portion of the proofs, it was the core of the prosecutor's case. There could have been no conviction without that identification testimony. Thus, petitioner is entitled to habeas relief where his jury trial conviction rests on a violation of his federal constitutional rights.

Petitioner further asserts that the state court's decisions on his claims are direct results of a mis-application of federal law, but for which, there is a reasonable probability that the outcome of the appeal would have been different, and therefore, the presumption of prejudice is evident. United States v Cronic, 466 U.S. 648, 656, 104 S.Ct. 2039; Lockhart v Fretwell, 122 L.Ed.2d 180 (1993).

Petitioner claims entitlement to habeas relief under the Sixth and Fourteenth Amendments of the United States Constitutional guarantees to a criminal defendant, for the right to have effective assistance of counsel during the entire state court adversary process. Powell v Alabama, 287 U.S.

45, 60; 53 S.Ct. 55, 64, 77 L.Ed 158 (1932). Where trial and appellate counsel
was ineffective. Petitioner had no way of overcoming the states adversary
process against him. Petitioner exhausted all claims presented in his petition
to the Michigan Court of Appeals, and to the Michigan Supreme Court for
review. No other petitions was hence, this petition should no be ruled as
untimely as the state court's action denying relief were finalized as infra:

    a] Michigan Court of Appeals denial February 15, 2005;
    b] Michigan Supreme Court denial July 25, 2005;
    c] Michigan Court of Appeals denial August 9, 2007;
    d] Michigan Supreme Court denial January 9, 2007.

    Petitioner has no other available remedies in state courts for relief
from, on his federal constitutional claims exhausted in the state court's
appellate process, and a fundamental miscarriage of justice will continue
to occur unless this Court resolve the federal constitutional claims of one
who is actually innocent of the alleged crimes. This court is called upon
to correct the unreasonable application of federal law as applied by Michigan
courts in this case. (Title 23 U.S.C. § 2254[d][1].

    Additionally, a fundamental miscarriage of justice has occured, and
will continue unless this court corrects the errors passed upon by the state.

    This habeas inquiry is whether or not the standard order of denial,
rendered by Michigan Supreme Court, presents a factual question of whether
or not his claims were decided on the merits under a federal constitutional
inquiry, and whether the state's highest court decision rests on an
unreasonable application of federal law to the Sixth Amendment claim. Williams
v Taylor, supra.

    Petitioner's final assertion in this habeas inquiry is whether the
states court failure to rule on the merits of claims under a federal
constitutional inquiry is reviewed for the de novo standard. Wiggins v Smith
___U.S. ___; 123 S.Ct. 2527 (2003).

Petitioner urges this court to grant his petition and entitlement to any evidentiary hearing concerning his petition. The petitioner also urges this court to order the respondent, or the state of Michigan to answer, or otherwise show cause, why the petition for writ of habeas corpus should not be issued, granting relief. **28 U.S.C. § 2254(d)(1); Ams. VI, and XIV.**

Darnell Missouri #229199
Standish Maximum Correctional Facility
4713 West M-61
Standish, Michigan 48658

Date: **4** / **14** /2008

APPENDIX- A

(MICHIGAN COURT OF APPEALS DECISION)

# STATE OF MICHIGAN

DEFENDANT'S COPY

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 15, 2005

Plaintiff-Appellee,

v

No.  251307
Wayne Circuit Court
LC No.  03-005934-01

DARNELL MISSOURI,

Defendant-Appellant.

Before:  Talbot, P.J., Whitbeck, C.J., and Jansen, J.

PER CURIAM.

Defendant appeals as of right his jury conviction for assault with intent to murder, MCL 750.83, first-degree home invasion, MCL 750.110a(2), discharge of a firearm at a dwelling, MCL 750.234b; felony-firearm, MCL 750.227b, and malicious destruction of a building, MCL 750.380(3)(a).  We affirm.

On appeal, defendant first argues that he was denied a fair trial because of prosecutorial misconduct.  He asserts that the prosecutor improperly introduced evidence about defendant's drug use and dealing, and vouched for the credibility of prosecution witnesses.

Appellate review of allegedly improper prosecutor conduct is precluded if the defendant fails to timely and specifically object unless an objection could not have cured the error or a failure to review the issue would result in a miscarriage of justice.  *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).  A miscarriage of justice will not be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Unpreserved issues are reviewed for plain error that affected substantial rights.  *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002).  Reversal is warranted only when a plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings.  *Callon, supra*, 329.

The prosecutor properly presented evidence of defendant's involvement with drugs to show bias, where defense witnesses had a special interest in his acquittal because they acquired drugs from him.  Defendant did not object to this testimony, and there is no showing that it affected the outcome of the case.

-1-

# Court of Appeals, State of Michigan

## ORDER

People of MI v Darnell Missouri

Docket No.   277754

LC No.   03-005934-01

Helene N. White
Presiding Judge

Brian K. Zahra

Karen M. Fort Hood
Judges

The Court orders that the motion for waiver of fees is GRANTED.

The Court further orders that the delayed application for leave to appeal is DENIED.

_____
Presiding Judge



A true copy entered and certified by Sandra Schultz Mengel, Chief Clerk, on

AUG 0 9 2007
_____
Date

_____
Chief Clerk

APPENDIX-B

(MICHIGAN SUPREME COURT ORDERS)

# Order

July 26, 2005

128221

**Michigan Supreme Court**
**Lansing, Michigan**

Clifford W. Taylor
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Justices

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

DARNELL MISSOURI,
        Defendant-Appellant.

SC: 128221
COA: 251307
Wayne CC: 03-005934-01

_____/

On order of the Court, the application for leave to appeal the February 15, 2005 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

t0719



I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 26 , 200 5

Clerk

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

January 8, 2008

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

134955

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

DARNELL MISSOURI,
        Defendant-Appellant.

SC: 134955
COA: 277754
Wayne CC: 03-005934-01

_____/

        On order of the Court, the application for leave to appeal the August 9, 2007 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).



        I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 8, 2008

_Corbin R. Davis_

d1217                                                                    Clerk

APPENDIX-C

(TRIAL COURT DECISION)



STATE OF MICHIGAN
IN THE THIRD JUDICIAL CIRCUIT COURT OF MICHIGAN
FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff,

                                  Hon. David Allen
                                  03-005934-01

-vs-

DARNELL MISSOURI,

      Defendant.

_____/

## OPINION

On September 4, 2003, following a jury trial, Darnell Missouri was convicted of Assault with Intent to Murder contrary to MCL 750.83; MSA 28.278, Home Invasion, contrary to MCL 750.110(a)2; MSA 28.305(a)2, Discharge of a firearm at a dwelling, contrary to MCL 750.234B;MSA 28.431(2), Malicious destruction of a building, contrary to MCL 750.380(3)(A); MSA 28.423, and Felony Firearm, contrary to MCL 750.227(b); MSA 28.424(2). On September 19, 2003, defendant was sentenced to 200 months to 300 months for AWIM, 18 months to 20 years for Home Invasion, 18 months to five years for destruction of a building, 18 months to four years for discharge of a firearm towards a dwelling and a consecutive two-year sentence for felony firearm.

On February 15, 2005, the Michigan Court of Appeals affirmed defendant's conviction.  On July 26, 2005, Michigan's Supreme Court denied defendant's Application for Leave to Appeal.  Defendant now brings a motion for Relief from Judgment before the Court pursuant to MCR 6.500.

Defendant alleges six errors.  First, Defendant argues the prosecutor committed reversible error by allowing the prosecution witnesses to testify that the holes "appeared" to be bullet holes when there was no evidence to support such theory as well as arguing to the jury that this was the truth and trial counsel was ineffective for failing to object.  Second, defendant claims he was denied effective assistance of counsel for trial counsel's failure to conduct pre-trial investigation, failure to object and suppress the unduly suggestive out of court identification and in-court identification.  Third, Defendant alleges he was denied a fair trial as a result of ineffective assistance of counsel and prosecutor misconduct.

Fourth, defendant asserts the district court abused it discretion by binding him over for trial where the prosecution did not have sufficient evidence that defendant actually shot at the victim.  Fifth, defendant alleges he was denied his federal constitutional right to a jury trial by sentencing him on the basis of behavior not proven beyond a reasonable doubt to the jury.  Defendant also alleges the court erred in ordering him to pay restitution.  Defendant's final argument is his appellate counsel was ineffective for not raising issues outlined in his motion for relief from judgment.

MCR 6.508(D) provides in relevant part

Entitlement to relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion:
***
(2) Alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes
(3) Alleges grounds for relief, except jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) Good cause for failure to raise such grounds on prior appeals or in the prior motion, and

(b) Actual prejudice from the alleged irregularities that support the claim for relief. As used in this rule, "actual prejudice" means that
(i) In a conviction following a trial, but for the alleged error the defendant would have had a reasonably likely chance for an acquittal;
***
(iii) or that the irregularity was so offensive to the maintenance of a sound judicial process it should not be allowed to stand regardless of its effect on the outcome of the case.
***

The court may waive the "good cause" requirement of sub-rule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

The majority of issues raised by defendant (1 – 3, and 6) were previously litigated in his appeal of right, defendant has previously argued prosecutorial misconduct, the trial court erred in allowing a witness to testify he first saw defendant when he was breaking into another house, and ineffective assistance of trial counsel for failing to object to bad acts evidence, challenge the

identification evidence and object to prosecutorial misconduct.[1]   This Court is precluded from relitigating the issue, as appellate court's decisions are binding on courts of equal or subordinate jurisdiction during subsequent proceedings in the same case.   MCR 6.508; People v. Peters, 205 Mich App 312,316; 517 NW2d 773 (1994).   It is well settled that whatever has been decided upon one appeal cannot be re-examined in a subsequent appeal of the same suit. Supervisors v. Kennicott, 94 U.S. 498, 499 (U.S., 1877).

Defendant's fourth argument he claims the district court erred in binding him over for trial, as the prosecutor did not introduce sufficient evidence he actually shot at the victim beyond a reasonable doubt.   Defendant attempts to argue that although shots were fired into the home of the victim, no intent to kill was established.   Defendant buttresses his argument using the rationale, because the words, "I'm going to kill you" were not uttered, or, "if you don't let me in I will kill you" were not said, that there was no intent on his part to kill the victim.

However, the very fact that the defendant discharged his weapon into the home at point blank range, shooting through the window and door, is so reckless with extreme indifference to human life that intent can be extrapolated from defendant's conduct.   Michigan's Supreme Court held: "The object of the preliminary examination is not to prove guilt or innocence beyond a reasonable doubt, nor should a magistrate discharge a defendant when evidence conflicts or raises reasonable doubt of his guilt; such questions

_____

[1] Michigan's Court of Appeals, (in an unpublished opinion #251307, dated February 15, 2005), which affirmed his conviction.

should be left for the jury upon trial. <u>People v. Doss</u>, 406 Mich 90; 276 NW2d 9 (1979).   The protocol for bind-over must be followed if there is probable cause, some evidence on each element of the crime charged or evidence from which those elements may be inferred.   <u>People v. Traughber</u>, 432 Mich 208; 439 NW2d 231 (1989).  After thoroughly reviewing the record, it reveals more than a deminimis amount of evidence pertaining to the elements for all offenses had met the threshold to establish probable cause.   Thus, defendant was properly bound over.

Defendant's final argument is the sentencing court must have a jury determine beyond a reasonable doubt the scoring of his guidelines prior to the sentencing him.   Moreover, defendant alleges the sentencing court erred by ordering him to pay restitution without following the procedures outlined in MCL 780.767(17). This Court finds no merit in defendant's argument. Nonetheless, the court rules are clear, defendant is precluded from raising "on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for re-sentencing, or in a proper motion to remand filed in the court of appeals." MCR 6.429(C).

Defendant's arguments fail to meet the heavy burden under MCR 6.508 (D)(3)(a) good cause and actual prejudice.  As a consequence of defendant's failure to show good cause or prejudice as required by the court rules, his

motion for relief of judgment must fail.   MCR 6.508(D)(3).   Therefore,

Defendant's Motion for Relief from Judgment is <u>DENIED</u>.

Dated: _2-27-07_ _____

_____
Circuit Court Judge

STATE OF MICHIGAN
IN THE THIRD JUDICIAL CIRCUIT COURT OF MICHIGAN
FOR THE COUNTY OF WAYNE

THE PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff,

                                         Hon. David Allen
                                         03-005934-01

-vs-

DARNELL MISSOURI,

     Defendant.

_____/

## ORDER

At a session of said Court held in the Frank
Murphy Hall of Justice on 2/27/07

PRESENT:  HON. Hon. David J. Allen
                           Circuit Court Judge

In the above-entitled cause, for the reasons set forth in the foregoing Opinion;

IT IS HEREBY ORDERED that Defendant's Motion for Relief from Judgment is

DENIED.

_____
                       Circuit Court Judge

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT COURT | ORDER DENYING/GRANTING MOTION | CASE NO. |
|---|---|---|
| | | 03005934-01 |

THE PEOPLE OF THE STATE OF MICHIGAN

        vs.

~~DARNELL MISSOURI~~

              *Defendant*

    At a Session of Said Court held in The Frank Murphy Hall of Justice

    at Detroit in Wayne County on ____~~MARCH 23, 2007~~____

    **PRESENT**: Honorable __DAVID J. ALLEN_____

                               *Judge*

  A Motion for __RECONSIDERATION_____

_____ having been filed; and

the People having filed an answer in opposition; and the Court having reviewed the briefs and

records in the case and being fully advised in the premises;

    **IT IS ORDERED THAT** the Motion for __~~RECONSIDERATION~~_____

_____ be and

is hereby  ☒ denied    ☐ granted.

                                 *Judge*

                     DAVID J. ALLEN

**ORDER DENYING/GRANTING MOTION**

FORM #7

APPENDIX-F

(LOWER COURT DOCKET ENTRY)

CR3

FILE NO. 03-005934-01 FY

JOURNAL OF THE C82 CRIMINAL COURT

CITY OF DETROIT

STATE OF MICHIGAN

COMPLAINANT:    GILLIAM,CLIFFORD

DATE APRIL 2, 2007  PAGE 1

MISSOURI,DARNELL,

LPD NUMBER 611937

| DATE OF EVENT | EVENT DESCRIPTION |
|---|---|
| MAY 1, 2003 | WARRANT        NO BOND SET<br>SIGNED WARRANT<br>JUDGE: COSTELLO,ROBERT K<br>OTHER          : ATTORNEY UNREPORTED<br>REPORTER: UNREPORTED,                          CERT#: 3001 |
| MAY 1, 2003 | WARRANT ISS<br>WARRANT RECOMMENDED<br>JUDGE: PROSECUTOR<br>REPORTER: ** UNKNOWN REPORTER |
| MAY 2, 2003 | ARR-WRNT    BOND SET<br>DEFENDANT STANDS MUTE; PLEA OF NOT GUILTY ENTERED BY COURT<br>JUDGE: COSTELLO,ROBERT K<br>OTHER          : ATTORNEY UNREPORTED<br>REPORTER: UNREPORTED,                          CERT#: 3001<br>BAIL WAS FIXED AT    $150,000.00 10% BOND<br>NEXT SCHEDULED PROCEEDING:<br>EXAM<br>ON MAY        15, 2003      BEFORE JUDGE ADAMS,DEBORAH ROSS |
| MAY 15, 2003 | EXAM       BOND CONTINUED<br>PROCEEDING HELD; DEFENDANT WAS BOUND OVER<br>JUDGE: ADAMS,DEBORAH ROSS<br>ASSIGNED COUNSEL    : HARRIS:LYLE,B<br>PROSECUTION         : ABDELNOUR,TANYA,<br>REPORTER: MORTON,SHARI,                         CERT#: 0000<br>BAIL WAS FIXED AT       $0.00 |
| MAY 15, 2003 | FILING    TO ASSIGN COUNSEL<br>FILED |
| MAY 15, 2003 | FILING<br>FILED<br>BOND CONTINUED<br>JUDGE: ADAMS,DEBORAH ROSS<br>ASSIGNED COUNSEL    : HARRIS,LYLE B<br>PROSECUTION         : BEADLE,THOMAS<br>REPORTER: ** UNKNOWN REPORTER |
| MAY 15, 2003 | FILING    TRIAL DOCKET<br>FILED |
| MAY 15, 2003 | FILING<br>FILED<br>BOND CONTINUED<br>JUDGE: ADAMS,DEBORAH ROSS<br>ASSIGNED COUNSEL    : HARRIS,LYLE B<br>PROSECUTION         : BEADLE,THOMAS<br>REPORTER: ** UNKNOWN REPORTER |
| MAY 15, 2003 | FILING    REFER TO PRE-TRIAL SERVICES FOR A REPORT<br>(C O N T I N U E D) |

CR3

FILE NO. 03-005934-01 FY

JOURNAL OF THE C82 CRIMINAL COURT

CITY OF DETROIT

STATE OF MICHIGAN

DATE APRIL 2, 2007 PAGE 2

MISSOURI, DARNELL,

COMPLAINANT:      GILLIAM, CLIFFORD

LPD NUMBER 611937

| DATE OF EVENT | EVENT DESCRIPTION |
|---|---|
| | FILED |
| | JUDGE: ADAMS,DEBORAH ROSS |
| | REPORTER: ** UNKNOWN REPORTER |
| MAY 15, 2003 | FILING          TO ADD A COUNT ON INFORMATION |
| | FILED: ADAMS,DEBORAH ROSS |
| | REPORTER: ** UNKNOWN REPORTER |
| | NEXT SCHEDULED PROCEEDING: |
| | ARRAIGNMENT ON INFORMATION |
| | ON MAY                 28, 2003    BEFORE JUDGE TEMP JUDGE ASG - AOI |
| MAY 20, 2003 | ASSGNMNT      BOND CONTINUED |
| | TRIAL DOCKET      BOND CONTINUED |
| | JUDGE: TEMP JUDGE ASG - AOI |
| | REPORTER: UNREPORTED,         NO CHANGE |
| | BAIL WAS FIXED AT                  $0.00 |
| | NEXT SCHEDULED PROCEEDING: |
| | ARRAIGNMENT ON INFORMATION |
| | ON MAY               28, 2003    BEFORE JUDGE KENNY,TIMOTHY M |
| MAY 28, 2003 | ARR-INFO        BOND SET                                    CERT#: 3001 |
| | HELD |
| | JUDGE: KENNY,TIMOTHY M |
| | OTHER          :      HARRIS,LYLE,B |
| | PROSECUTION   :      TRZASKOMA,VIRGINIA HERRING |
| | REPORTER: BLACKMAN,SHEDRI |
| | BAIL WAS FIXED AT            $150,000.00 10% BOND |
| MAY 28, 2003 | DSPN CONF      BOND SET                                    CERT#: 0454 |
| | HELD |
| | JUDGE: KENNY,TIMOTHY M |
| | OTHER          :      HARRIS,LYLE,B |
| | PROSECUTION   :      TRZASKOMA,VIRGINIA HERRING |
| | REPORTER: BLACKMAN,SHEDRI |
| | BAIL WAS FIXED AT            $150,000.00 10% BOND |
| | NEXT SCHEDULED PROCEEDING: |
| | CAL-CONF |
| | ON MAY               30, 2003    BEFORE JUDGE WORTHY,KYM, |
| MAY 30, 2003 | CAL-CONF      BOND CONTINUED                               CERT#: 0454 |
| | HELD |
| | JUDGE: WORTHY,KYM, |
| | ASSIGNED COUNSEL :      TARATUTA,STEPHEN, |
| | PROSECUTION   :      BAILEY,ANDREA D |

(C O N T I N U E D)

CR3
FILE NO. 03-005934-01 FY

JOURNAL OF THE C82 CRIMINAL COURT
CITY OF DETROIT
STATE OF MICHIGAN

COMPLAINANT:   GILLIAM, CLIFFORD

LPD NUMBER 611937

DATE APRIL 2, 2007  PAGE 3

MISSOURI, DARNELL,

DATE OF EVENT | EVENT DESCRIPTION

MAY 30, 2003
REPORTER: HARDING,MELISSA
BAIL WAS FIXED AT              $0.00
CERT#: 0000

MAY 30, 2003
FILING      TO WITHDRAW AS ATTORNEY
HEARD AND GRANTED
JUDGE: WORTHY, KYM,
REPORTER: ** UNKNOWN REPORTER

MAY 30, 2003
FILING      TO ASSIGN COUNSEL
FILED
BOND CONTINUED
JUDGE: WORTHY, KYM,
ASSIGNED COUNSEL   :   TARATUTA, STEPHEN,
PROSECUTION        :   BAILEY, ANDREA D
REPORTER: ** UNKNOWN REPORTER

MAY 30, 2003
MOTION      BOND CONTINUED
HELD
JUDGE: WORTHY, KYM,
OTHER          :   CAMERON,MELINDA S
PROSECUTION    :   BAILEY, ANDREA D
REPORTER: HARDING,MELISSA
BAIL WAS FIXED AT              $0.00
CERT#: 0000

JULY 7, 2003
FILING      FOR DISCOVERY
FILED
JUDGE: WORTHY, KYM,
REPORTER: ** UNKNOWN REPORTER

JULY 11, 2003
FINAL-CONF
HELD
JUDGE: WORTHY, KYM,
OTHER          :   TARATUTA, STEPHEN,
PROSECUTION    :   DAWSON,LORI,
REPORTER: HARDING,MELISSA
NEXT SCHEDULED PROCEEDING:
MOTION
ON AUGUST  1, 2003   BEFORE JUDGE WORTHY, KYM,
CERT#: 0000

JULY 15, 2003
FILING      TO SUPPRESS
FILED
JUDGE: WORTHY, KYM,
REPORTER: ** UNKNOWN REPORTER

JULY 16, 2003
FILING      TO QUASH INFORMATION
FILED

(C O N T I N U E D)

CR3

FILE NO. 03-005934-01 FY

JOURNAL OF THE C82 CRIMINAL COURT

CITY OF DETROIT

STATE OF MICHIGAN

DATE APRIL    2, 2007   PAGE   4

MISSOURI, DARNELL,

COMPLAINANT:    GILLIAM, CLIFFORD

LPD NUMBER 611937

CERT# 4252

| DATE OF EVENT: | | EVENT DESCRIPTION |
|---|---|---|
| AUGUST | 1, 2003 | JUDGE: WORTHY, KYM, <br> REPORTER: ** UNKNOWN REPORTER <br><br> MOTION <br> PROCEEDING WAS ADJOURNED <br> AT THE REQUEST OF THE PROSECUTION <br> JUDGE: WORTHY, KYM, ; TARATUTA, STEPHEN, <br> OTHER : DAWSON, LORI, <br> PROSECUTION <br> REPORTER: QUINN, SHAUN, <br> NEXT SCHEDULED PROCEEDING: <br> MOTION <br> ON AUGUST    22, 2003    BEFORE JUDGE LUCAS, WILLIAM |
| AUGUST | 11, 2003 | FILING       TO PRODUCE WITNESS(ES) <br> FILED <br> JUDGE: WORTHY, KYM, <br> REPORTER: ** UNKNOWN REPORTER |
| AUGUST | 11, 2003 | FILING       FOR DISCOVERY <br> FILED <br> JUDGE: WORTHY, KYM, <br> REPORTER: ** UNKNOWN REPORTER |
| AUGUST | 22, 2003 | FILING       TO QUASH INFORMATION <br> HEARD AND DENIED <br> BOND CONTINUED <br> JUDGE: LUCAS, WILLIAM ; TARATUTA, STEPHEN, <br> OTHER : JANSEN, JOE <br> PROSECUTION <br> REPORTER: ** UNKNOWN REPORTER |
| AUGUST | 22, 2003 | FILING       TO SUPPRESS <br> WITHDRAWN <br> JUDGE: LUCAS, WILLIAM <br> REPORTER: ** UNKNOWN REPORTER |
| AUGUST | 22, 2003 | FILING       TO PRODUCE WITNESS(ES) <br> WITHDRAWN <br> JUDGE: LUCAS, WILLIAM <br> REPORTER: ** UNKNOWN REPORTER |
| AUGUST | 22, 2003 | MOTION <br> HELD <br> JUDGE: LUCAS, WILLIAM <br> OTHER : TARATUTA, STEPHEN, |

(C O N T I N U E D)