## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DARNELL MISSOURI,

        Petitioner,

v.                                   Case Number: 08-CV-11660

THOMAS BIRKETT,

        Respondent.

_____/

### OPINION AND ORDER DENYING "PETITION FOR WRIT OF HABEAS CORPUS" AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Darnell Missouri, a state inmate currently incarcerated at the Carson City Correctional Facility[1] in Carson City, Michigan, filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* pleadings, Petitioner challenges his convictions and sentences for (1) assault with intent to murder, Mich. Comp. Laws § 750.83, (2) first-degree home invasion, Mich. Comp. Laws § 750.110A2, (3) discharge of a firearm at a dwelling, Mich. Comp. Laws § 750.234B, (4) felony firearm, Mich. Comp. Laws § 750.227BA, and (5) malicious destruction of a building, Mich. Comp. Laws § 750.3803A. He was sentenced to concurrent prison terms of (1)

---

[1]Petitioner was incarcerated at the Standish Maximum Correctional Facility when he originally filed his petition for writ of habeas corpus; however, he has since been transferred to the Carson City Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the court would order an amendment of the case caption. However, because the court is denying the petition in this case, it finds no reason to do so.

200 to 300 months for the assault conviction, (2) eighteen months to twenty years for the home invasion conviction, (3) eighteen months to four years for the discharge of a firearm conviction, and (4) one year, six months to five years for the malicious destruction conviction.  Those sentences are consecutive to the mandatory two years in prison for the felony-firearm conviction.  Having fully considered the parties' positions and briefs, the court will deny the petition and decline to issue Petitioner a certificate of appealability.

## I.  BACKGROUND

Petitioner's conviction arises out of a non-fatal shooting incident that occurred at the home of Clifford Frederick Gilliam on April 27, 2003.  Gilliam, the victim, was first to testify at Petitioner's trial, which began about four months later, on September 2, 2003.

According to Gilliam's testimony, he had seen Petitioner, whom he knew as "Joe,"  across the street from his house, "every day for about two or three months." (Trial Tr. 5-6, Sept. 3, 2003.)  He also said there had been a time when he had encountered Petitioner at much closer range when Petitioner approached Gilliam's house to borrow a plunger.  He identified Petitioner in court as the man who broke into his home and shot at him.  Regarding the night in question, Gilliam testified as follows.

Chanta Paul, whom Gilliam  frequently had seen with Petitioner, came to Gilliam's house to use the bathroom.  Paul rushed into the bathroom and was still there when Petitioner knocked on his door, asking to talk to her.  Gilliam, at Paul's request, did not allow Petitioner to enter the house and Petitioner thereupon picked up a chair from the porch and threw it through the front window.  Gilliam then picked up a bat and warned Petitioner not to enter.  Although Petitioner insisted that he was coming in, he

2

nevertheless stepped back and did not enter.

Gilliam testified that he had been unaware that Petitioner was armed until Petitioner backed out onto the porch, reached into his pants pocket, pulled out a gun, and fired five or six shots. The bullets missed Gilliam, but shot out his windows and his storm door. Petitioner told Gilliam that he would return to "burn this motherfucker down" and then left. (Trial Tr. 17, Sept. 3, 2003.) About five minutes later, Gilliam heard a brick being thrown through his bedroom window. Gilliam said that he was not sure where Paul was during the incident. Neighbors called for police, who arrived within five minutes. Gilliam told the police what "Joe" had done, but there was no arrest at that time. Several days later Gilliam saw Petitioner standing on a corner near his house, phoned the police, and Petitioner was arrested. Gilliam was asked, but denied being under the influence of drugs or alcohol when the incident occurred.

Frank Gaines, a neighbor, also identified Petitioner in court as the man that he saw break into Gilliam's house. Gaines said he had seen Petitioner before in the neighborhood selling drugs. In response to a question about whether he knew Petitioner, Gaines responded, "No, I saw him in the area. When I first noticed him, he was breaking in a house 1960 Highland and I was coming down the alley." (Trial Tr. 58, Sept. 3, 2003.) Defense counsel objected on the ground of relevancy but the trial court overruled his objection.

Gaines further testified that, on the night in question, he saw Petitioner trying to break down Gilliam's door. He said he saw Petitioner take a chair that was on Gilliam's porch, throw it through the window, and attempt to step inside the house. He said he then saw Petitioner fire about five gunshots into the house. Gaines said that he heard

3

Gilliam say that he was going to bash Petitioner in the head.  He also said he heard Petitioner threaten to burn Gilliam's house down.  Gaines said he saw Petitioner leave Gilliam's house, run down an alley and then come back to Gilliam's house.  He subsequently heard glass breaking and phoned the police.

John Burris, a Detroit police officer, testified that he, along with Officer Juan Simpkins, received a dispatch to go to the scene.  He said he spoke with both Gilliam and Paul.  Burris said that as he was talking to Gilliam, who was describing the perpetrator, Paul interjected with the name "Darnell Missouri," telling Burris that Missouri was her boyfriend.  Burris testified that in searching the house he did not find any spent casings.

William Brown, also a Detroit police officer, testified that on April 30 he was called, along with Officer Kenneth Dale, to meet a Gilliam at his house so that he could "point out [the] person who shot at his house."  (Trial Tr. 82, Sept. 3, 2003.) Once there, Gilliam gave them a description of the person and told the officers where he was located.  The officers went to that area and when Gilliam identified Petitioner as the person who shot at his house, Petitioner was arrested.

The prosecution rested, and Defense counsel moved for a directed verdict which was denied.

Chanta Marie Paul testified for the defense.  She said she was with Gilliam at his home, on the night in question; she said she went there to get drunk with him. According to Paul, she went to Gilliam's house on previous occasions to drink and get high.  She testified that Gilliam, a heavy drinker, drank two pints before she left his house that night.

4

Paul further testified that she returned to Gilliam's house at 1:00 or 2:00 a.m., because she needed to hide from her drug dealer, named Uche'. Paul admitted that she went to Gilliam's house because she stole from Uche'. She testified that she knew Uche' from the neighborhood. She said she bought drugs from him. She testified that she told Gilliam that Uche' was after her. According to Paul, she and Gilliam then drank and got high on crack cocaine. She testified that Gilliam offered her money for sex. She said she agreed.

According to Paul, she and Gilliam then went into the bedroom, and, while they were having sex, someone knocked on the bedroom window. She testified that she told Gilliam that it was probably Uche' and asked him to look, but neither she nor Gilliam looked to see who knocked on the window.

Paul testified that she then went to the front room and that Gilliam followed, staggering in the hallway. She said she looked out the front window and saw Uche'. She said she admitted to him that she took his stuff and testified that Uche' said he would get her. Paul testified that Uche' broke the window with a chair. According to her testimony, she then ran and hid in a closet. She denied that Petitioner was the person who threw the chair. She also testified that she was not at Gilliam's house that night and that she had not seen him that day.

On cross-examination, Paul admitted telling the police that Petitioner was the man who threw the chair through the window. She also admitted that she knew Petitioner because she bought crack from him, as she had from Uche', and that she knew Uche' and Petitioner to be in the same vicinity. She denied knowing what their businesses were. She estimated that about thirty minutes elapsed between the time

5

she stole the items and when she went to Gilliam's house, but denied that Uche' was just lucky in finding her at Gilliam's house.

Paul also admitted hearing gunshots, and then testified, for the first time, that the man at the window had a gun. She said that in seeing the gun, she ran. When questioned about her direct examination that the chair thrown through the window made her run, Paul clarified that she saw the gun first. She also testified that she gave the police Petitioner's name because it was the only name she could think of, and because the police told her they would take her home if she gave them a name.

Bobby Abington Johnson, who had known Petitioner for at least three years, testified that she was with him at the time the crime occurred. Johnson described the events of that day and said Petitioner was with her the entire time; when she fell asleep, he was there, and when she woke, he was there. She said there were no signs that he left the house while she slept.

On cross-examination, Johnson admitted that she and Petitioner had a sexual relationship, and that she had been dating him for about a year and a half. She admitted that he helped her with her finances, and that he could have left when she was asleep, without her knowing it, but she did not think so. Johnson admitted contacting Paul on Petitioner's behalf and asking her to testify. She did not contact the police about Paul's prospective testimony. Johnson acknowledged that she knew that Petitioner may have had sex with Paul and that she knew that he sold drugs.

The defense rested, and the jury later found Petitioner guilty of the above-stated charges.

Following his sentencing, Petitioner, through counsel, filed his appeal of right in

6

the Michigan Court of Appeals, raising the following claims:

I.      The cumulative effect of the prosecutor's misconduct denied [Petitioner] his state and federal rights to a fair trial.

      A.      Without benefit of pretrial notice and the rational for admission, the prosecutor repeatedly injected prejudicial other acts evidence and innuendo.

      B.      The prosecutor improperly vouched for the credibility of prosecution witnesses Gilliam and Gaines.

II.      The trial court committed evidentiary error infringing the Fourteenth Amendment right to due process, when it admitted other acts evidence, over defense objection, before determining that the evidence was relevant and not unduly prejudicial.

III.      Ineffective assistance of counsel denied [Petitioner] a fair trial.

      A.      Trial counsel failed to object to the improper injection of other acts evidence.

      B.      Trial counsel ineffectively failed to seek the appointment of an expert on identification, or a cautionary instruction on the grave dangers of misidentification.

      C.      Trial counsel failed to timely and properly object to the prosecution's misconduct raised in issue I of this brief.

On February 15, 2005, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Missouri*, No. 251307, 2005 WL 354567 (Mich. Ct. App. Feb. 15, 2005). Subsequently, Petitioner filed a timely application for leave to appeal in the Michigan Supreme Court, raising the same claims that he raised in the court of appeals. The Michigan Supreme Court denied the application on July 26, 2005. *People v. Missouri*, 699 N.W.2d 702 (Mich. 2005).

Petitioner then filed a motion for relief from judgment in the trial court, alleging the following six errors:

7

I.      The prosecutor committed reversible error by allowing the prosecutor's witness to testify that holes "appeared" to be bullet holes when there was no evidence to support such theory as well as arguing to the jury that this was the truth and trial counsel was ineffective for failing to object.

II.     [Petitioner] was denied effective assistance of counsel for trial counsel's failure to conduct a pretrial investigation, failure to object and suppress the unduly suggestive out of court identification and in-court identification.

III.    [Petitioner] was denied a fair trial as a result of ineffective assistance of counsel and prosecutor misconduct.

IV.     The district court abused its discretion by binding [Petitioner] over for trial, where the prosecutor did not introduce sufficient evidence that [Petitioner] actually shot at the victim.

V.      [Petitioner] was denied his federal constitutional right to a jury trial by sentencing him on the basis of behavior not proven beyond a reasonable doubt to the jury.

VI.     [Petitioner] received ineffective assistance of counsel on appeal when counsel failed to raise the following issues outlined in his motion for relief from judgment.

The trial court denied Petitioner's motion on February 27, 2007. *People v. Missouri*, No. 03-005934-01 (Wayne County Circuit Court, Feb. 27, 2007). Petitioner filed a motion for reconsideration, which was also denied. *People v. Missouri*, No. 03-005934-01 (Wayne County Circuit Court, Mar. 23, 2007). Petitioner then filed a delayed application for leave to appeal that decision in the Michigan Court of Appeals, which was denied on August 9, 2007. *People v. Missouri*, No. 277754 (Mich.Ct.App. Aug. 9, 2007). His application for leave to appeal the court of appeals' decision, filed in the Michigan Supreme Court, was denied on January 8, 2008. *People v. Missouri*, 743 N.W.2d 15 (Mich. 2008).

On April 18, 2008, Petitioner filed his petition for writ of habeas corpus, raising

8

the following claims:

I.     The cumulative effect of the prosecutor's misconduct denied
       Petitioner his state and federal rights to a fair trial.

       A.     Without benefit of pretrial notice and the rational for
              admission, the prosecutor repeatedly injected
              prejudicial other acts evidence and innuendo.

       B.     The prosecutor improperly vouched for the credibility
              of prosecution witness (Gilliam) and (Gaines).

II.    The trial court committed evidentiary error infringing the
       Fourteenth Amendment right to due process, when it admitted
       other acts evidence, over defense objection, before determining
       that the evidence was relevant and not unduly prejudicial.

III.   Ineffective assistance of counsel denied Petitioner a fair trial.

       A.     Trial counsel failed to object to the improper injection
              of other acts evidence.

       B.     Trial counsel failed to seek the appointment of an
              expert on identification, or a cautionary instruction on
              the grave dangers of misidentification.

       C.     Trial counsel failed to timely and properly object to the
              prosecution's misconduct raised in claim I of this
              petition.

IV.    Petitioner's conviction and sentence must be vacated, due to
       irreparably and unduly suggestive identification where trial counsel
       was ineffective for failing to move the court to suppress the
       identification prior to Petitioner's trial.

V.     Petitioner was denied his right to effective assistance of counsel
       under the Sixth Amendment under state and federal constitution,
       when counsel failed to object to the in-court identification as well
       as filing a motion to suppress.

VI.    The prosecutor committed reversible error by allowing the
       prosecutor's witness to testify that holes "appeared" to be bullet

9

holes when there was no evidence to support such theory as well as arguing to the jury that this was the truth and trial counsel was ineffective for failing to object.

VII.    Petitioner received ineffective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to conduct adequate pretrial investigation.

VIII.   Petitioner's conviction for assault with intent to commit murder must be vacated where the district court abused its discretion by binding Petitioner over for trial, where the prosecutor did not introduce sufficient evidence that Petitioner actually shot at the victim.

IX.     Petition was denied his federal constitutional right to a jury trial be sentencing Petitioner on the basis of behavior not proven beyond a reasonable doubt to the jury.

X.      Petitioner was denied a fair trial considering the cumulative effect of both prosecution misconduct and ineffective assistance of counsel.

XI.     Petitioner received ineffective assistance of counsel on appeal when counsel failed to raise the following issues outlined in Petitioner's petition.

XII.    Petitioner asserts that the facts and evidence presented in his application for writ of habeas corpus establishes a claim of actual innocence.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs

this court's habeas corpus review of state-court decisions and states in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

10

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented at the State
court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts.  An "unreasonable application" occurs

when the state court identifies the correct legal principle from a Supreme Court's

decision but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  A federal habeas court may not find

a state adjudication to be "unreasonable" "simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly."  *Id.* at 411.

### III.  DISCUSSION

### A.  Prosecutorial Misconduct

In his first claim, Petitioner alleges that the cumulative effect of the prosecutor's

misconduct, in interjecting other acts evidence and improperly vouching for the

credibility of Gilliam and Gaines, denied him his right to a fair trial.  In response,

Respondent argues that the claim is procedurally defaulted, because defense counsel

failed to timely and specifically object.[2]  In addressing this issue, the Michigan Court of

---

[2]Respondent contends that Petitioner's prosecutorial misconduct claim is barred
by Petitioner's procedural default in failing to object at trial.  Although Respondent's
procedural default argument appears meritorious on its face because, as discussed
*infra*, these claims are clearly without merit, the court may deny the petition on this basis

Appeals applied a plain-error standard, holding:

On appeal, defendant first argues that he was denied a fair trial because of prosecutorial misconduct.  He asserts that the prosecutor improperly introduced evidence about defendant's drug use and dealing, and vouched for the credibility of prosecution witnesses.

Appellate review of allegedly improper prosecutor conduct is precluded if the defendant fails to timely and specifically object unless an objection could not have cured the error or a failure to review the issue would result in a miscarriage of justice.  A miscarriage of justice will not be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction.

Unpreserved issues are reviewed for plain error that affected substantial rights.  Reversal is warranted only when a plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings.

The prosecutor properly presented evidence of defendant's involvement with drugs to show bias, where defense witnesses had a special interest in his acquittal because they acquired drugs from him.  Defendant did not object to this testimony, and there is no showing that it affected the outcome of the case.

While a prosecutor may not vouch for the credibility of a witness, a prosecutor may argue from the facts that a witness is worthy or not worthy of belief.  Here, the prosecutor asked the jury to use its common sense, and carefully reflect on the testimony, which would show his witnesses were credible.  The prosecutor's argument was appropriate and did not ask the jury to convict based on the prosecutor's special knowledge.

---

without first addressing procedural default.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (procedural default is not jurisdictional); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted) ("[J]udicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."); *see also, generally*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings).

*Missouri*, 2005 WL 354567, at *1.

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's misconduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they are deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citing *Serra V. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1355-56 (6th Cir. 1993)). Finally, to constitute a denial of due process, the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (citing *United States v. Thomas*, 728 F.2d 313, 320 (6th Cir.1984) (quoting *United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir.), *cert. denied*, 447 U.S. 907 (1980)) (internal quotation omitted).

### 1. No Misconduct Regarding Other Acts Evidence

Petitioner claims that the prosecutor engaged in misconduct by introducing evidence about his drug use and about his drug dealing, thereby denying him a fair trial. He argues that the evidence was irrelevant and only served to prejudice the jury. The

13

Michigan Court of Appeals, in analyzing Petitioner's claim under the plain-error standard, found that the prosecutor properly presented evidence of Petitioner's involvement with drugs to show bias, specifically where the witnesses had a special interest in his acquittal because they acquired drugs from him.  It is not prosecutorial misconduct for a prosecutor to offer evidence which is deemed relevant and admissible by the trial court.  *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008); *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *Moore v. Stovall*, No. 06-CV-14824, 2008 WL 2547418, at *3 (E.D. Mich. June 20, 2008) (habeas petitioner could not establish that the prosecutor's use of properly admitted testimony constituted misconduct).

The court finds that the court of appeals' decision, that any error was harmless in view of the admissible evidence that established Petitioner's guilt, was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  The evidence against Petitioner was overwhelming.  Moreover, the court agrees with the state appellate court's assessment that the relevance of whether Petitioner was a drug dealer went to demonstrate bias on the part of the witnesses because they got their drugs from him.  Petitioner is thus not entitled to habeas relief regarding this claim.

### 2.  No Misconduct Regarding Improper Vouching

Petitioner next argues that the prosecutor improperly vouched for the credibility of prosecution witnesses.  Improper vouching occurs only either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's] office [] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury."  *United State v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see*

14

also, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001) ("We will not overturn a verdict unless the prosecutorial misconduct is 'so pronounced and persistent that it permeate[d] the entire atmosphere of the trial, . . . or so gross as probably to prejudice the defendant.") (citing *Pritchett*, 117 F.3d at 964).

Here, when viewed in context, it is clear that the prosecutor's comments did not express a personal belief in the witnesses' credibility (or lack thereof), or imply that the prosecutor had special knowledge of facts not before the jury. The prosecutor did not express a personal belief in the witnesses' veracity or suggest that facts found outside the record supported their testimony, but merely argued to the jury that the evidence and common sense should lead it to conclude that the prosecution's witnesses were credible. The prosecutor's comments were merely a fair characterization of the evidence presented to the jury based on his summation of that evidence. As such, they did not constitute impermissible vouching for the credibility of the witnesses.

Further, "it is well established that juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict. While common sense is no substitute for evidence, common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence." *United States v. Durham*, 211 F.3d 437, 441 (7th Cir. 2000). Thus, the prosecutor was permitted to urge the jury to use its common sense in evaluating the credibility of the witnesses' testimony. Accordingly, the court concludes that Petitioner is not entitled to habeas relief on his prosecutorial misconduct claim of improper vouching.

**B.  Other Acts**

Petitioner next argues that the trial court improperly permitted other acts

15

evidence under M.R.E. 404(b).  The Michigan Court of Appeals, the last court to issue a

reasoned decision regarding this claim, stated in pertinent part:

> Defendant next argues that the trial court erred in allowing a
> witness to testify that he first saw defendant when he was breaking into
> another house.  The prosecutor concedes that this bad acts evidence
> should not have been admitted.  However, error requires reversal only if it
> prejudicial.  Whether a preserved nonconstitutional error is harmless
> depends upon the nature of the error and its effect on the reliability of the
> verdict in light of the weight of the untainted evidence.  The error is
> presumed to be harmless and the defendant bears the burden of showing
> that the error resulted in a miscarriage of justice.  Error justifies reversal if
> it is more probable than not that it affected the outcome.
>
> Here, it is unlikely that the error affected the outcome of the case.
> The comment was brief, and it was not supported by any additional
> evidence.  Given the strength of the eyewitness testimony and the
> weakness of the defense, defendant has failed to show that it is more
> likely than not that the evidence affected the outcome of the case.

*Missouri*, 2005 WL 354567, at *1-2 (citations omitted).

Here, to the extent Petitioner's argument is based upon state law, he has failed

to state a claim upon which habeas relief may be granted.  *Lewis v. Jeffers*, 497 U.S.

764, 780 (1990).  A question concerning a perceived error of state law serves as a basis

for habeas corpus relief only when the petitioner is denied fundamental fairness in the

trial process.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra*, 4 F.3d at 1354.

Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental

fairness," may it violate due process and warrant habeas relief.  *Bugh v. Mitchell*, 329

F.3d 496, 512 (6th Cir. 2003).

The rulings by a state's highest court with respect to state law are binding on the

federal courts.  *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Furthermore, the

Supreme Court has "reemphasize[d] that it is not the province of a federal habeas court

16

to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 68. The federal courts are bound by decisions of an intermediate state appellate court unless convinced that the highest state court would decide the issue differently. *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988). To determine whether the admission or inadmissibility of evidence has denied a defendant's fundamental due process rights, the court should consider the extent to which the evidence is critical to the case, whether it tends to exculpate the accused, and whether the evidence bears persuasive assurances of trustworthiness. *Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001).

The Sixth Circuit has specifically upheld state convictions against similar habeas challenges involving Rule 404(b) evidence on the ground that the use of such evidence in those cases was not fundamentally unfair. *See Burton v. Renico*, 391 F.3d 764, 775-76 (6th Cir. 2004); *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001). The same conclusion is warranted in this instance.

The Michigan Court of Appeals, in reviewing Petitioner's claim, found that it was properly admitted as evidence of bias. The court of appeals concluded that it was "unlikely that the error affected the outcome of the case. The comment was brief, and it was not supported by any additional evidence." *Missouri*, 2005 WL 354567, at *2. Given the strength of the eyewitness testimony and the weakness of the defense, Petitioner has therefore failed to show that it is more likely than not that the evidence affected the outcome of the case.

Analyzing this issue under the harmless error standard on collateral review under 28 U.S.C. § 2254, an error is deemed harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S.

17

619, 631 (1993) ( quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  *See also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (reaffirming *Brecht* as the correct standard on § 2254 review); *Wilson v. Mitchell*, 498 F.3d 491, 502-03 (6th Cir. 2007).  If an error generates "grave doubt[s]" as to its harmlessness, the reviewing court should treat it "not as if it were harmless, but as if it affected the verdict.'"  *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995); *Hamilton v. Morgan*, 474 F.3d 854, 867 (6th Cir. 2007).  The Supreme Court defines "grave doubt" as a judge's state of mind when "the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."  *O'Neal*, 513 U.S. at 435; *Ferensic v. Birkett*, 501 F.3d 469, 481 (6th Cir. 2007).

The court finds that any error regarding the presence of other acts evidence against Petitioner is harmless error under *Brecht*.  Here, the problematic (and apparently unresponsive) statement –that Gaines had first seen Petitioner as Petitioner was breaking into another house– was singular and fleeting.  As stated, the evidence against Petitioner was overwhelming, as more fully explained *infra* and *supra*.  Against this backdrop, the court concludes that the state court of appeals' decision is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  Petitioner is not entitled to habeas relief regarding this claim.

### C.  No Ineffective Assistance of Counsel

In his third claim, Petitioner asserts that trial counsel provided him with ineffective representation in three ways.  First, that counsel failed to object to the other acts evidence.  Second, that trial counsel failed to obtain an expert to challenge the identification.  Finally, that trial counsel was ineffective for failing to object to the prosecutorial misconduct raised in his first issue.  On direct appeal to the Michigan

18

Court of Appeals, Petitioner raised his claims of ineffective assistance of counsel regarding the above-sets of alleged errors.  The court of appeals stated:

> The bad acts evidence and alleged prosecutorial misconduct did not affect the outcome of the case, thus, failure to object was not prejudicial.  Counsel's decision not to seek an expert in eyewitness identification was reasonable trial strategy where the two eyewitnesses were familiar with defendant, and his own witness told police defendant was the one who did the shooting.  Defendant has failed to show that he was denied the effective assistance of counsel.

*Missouri*, 2005 WL 354567, at *2 (citations omitted)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688).  However, when assessing counsel's performance, the reviewing court should afford counsel great deference.  *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the

19

challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Strickland*, 466 U.S. at 689.

In the "prejudice" prong of the *Strickland* test, the Supreme Court held that a defendant must show more than "that the errors had some conceivable effect on the outcome of the proceeding"; instead, the defendant must be able to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 693-94.  No matter how deficient an attorney's performance, the *Strickland* Court reasoned, in the absence of a showing of prejudice, "it cannot be said that the conviction [ ] resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.* at 687.

In this case, the court of appeals found that the failure to object to the fleeting statement by Grimes, or to raise a claim of prosecutorial misconduct thereupon, did not affect the outcome of the trial and was not prejudicial, and that defense counsel's decision to not call an expert in eyewitness identification "was reasonable trial strategy where the two eyewitnesses were familiar with [Petitioner], and his own eyewitness told police [Petitioner] was the one who did the shooting."  *Missouri*, 2005 WL 354567, at *2 (citations omitted)

This court concludes that the court of appeals' decision was not an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court.  Petitioner cannot meet the prejudice prong of the *Strickland* test.  Rather, Petitioner was clearly identified by people who had seen him before and

20

who knew him in some respect.  Gilliam's testimony was very detailed and was
supported by Gaines's testimony as well.  Petitioner is not entitled to habeas relief
regarding this claim.

### D.  Claims IV-XII

In his remaining claims, Petitioner alleges that: (1) trial counsel was ineffective
for failing to move to suppress the identification prior to trial; (2) trial counsel was
ineffective for failing to object to the in-court identification; (3) the prosecutor committed
reversible error by allowing a witness to testify that holes appeared to be bullet holes
when there was no such evidence and trial counsel failed to object; (4) trial counsel was
ineffective for failing to conduct an adequate investigation; (5) there was insufficient
evidence to support his conviction for assault with intent to commit murder: (6) his
sentencing was based on behavior not proven beyond a reasonable doubt to the jury;
(7) he was denied a fair trial by the cumulative errors of the prosecutor and defense
counsel; (8) appellate counsel was ineffective for failing to raise the issues outlined in
this petition; and (9) he is actually innocent.  Respondent contends that these claims are
barred by procedural default, but regarding Petitioner's cumulative error claim,
Respondent asserts that the claim was not exhausted in the state courts and is
therefore barred from habeas review.  Alternatively, Respondent argues that the claim is
not characterized in the habeas petition as a federal claim.  Contrary to Respondent's
position, Petitioner argues that the cumulative effect of the errors, committed by the
prosecutor and by defense counsel in the course of his trial, deprived him of a fair trial.
However, Petitioner does concede, in his reply brief, that this claim is unexhausted.
Nonetheless, the court will address the claim.

21

First, the court agrees with Respondent, because Petitioner did not raise his claim of cumulative error in the state courts, it is therefore unexhausted, procedurally defaulted, and waived.  *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Additionally, the court finds that it would be futile for Petitioner to exhaust this claim, as the claim is without merit.  Distinct constitutional claims cannot be cumulated to provide a basis for habeas relief.  "Cumulative error" cannot form the basis of habeas relief under § 2254.  *Scott v. Elo,* 302 F.3d 598, 607 (6th Cir. 2002) ("[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief"); *see also, Campbell v. United States,* 364 F.3d 727, 736 (6th Cir. 2004) ("the accumulation of non-errors cannot collectively amount to a violation of due process") (citations omitted).  However, the Sixth Circuit, in a pre-AEDPA case, recognized that "[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair."  *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983) (citations omitted); *see also*, *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) (same)*; Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting) (same).  That rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process.  *Campbell*, 364 F.3d at 736; *Lorraine*, 291 F.3d at 447.

Because Petitioner's individual claims regarding prosecutorial misconduct and ineffective assistance of counsel lack constitutional merit, he cannot establish that habeas relief is warranted based upon a claim of cumulative error.  "That is, zero plus zero equals zero."  *Prescott v. Bell*, No. 08-CV-11861, 2009 WL 3429660 (E.D. Mich.

Oct. 21, 2009).  Accordingly, Petitioner is not entitled to habeas relief on this issue.

Second, regarding Petitioner's remaining claims, the court concludes that those claims are procedurally defaulted.[3]  Petitioner first raised those claims in a motion for relief from judgment under Mich.Ct.R. 6.500 *et. seq.*  The motion was denied for failing to establish entitlement to relief under Mich.Ct.R. 6.508(D).  It is well-established in this circuit that the procedural bar set forth in Mich.Ct.R. 6.508(D) is an adequate and independent ground to foreclose review of federal claims.  *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  In *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit considered the form used by the state appellate courts and found it presented a sufficient explanation that the ruling was based on failure to comply with a state procedural rule.  *See also McFarlan v. Yukins*, 356 F.3d 688, 697-98 (6th Cir. 2004).

A state prisoner's habeas claims are procedurally defaulted if the prisoner has failed to comply with an independent and adequate state procedural rule, thus causing default of the prisoner's federal claims in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  This can occur when an individual fails to present an issue to a state appellate court upon the only opportunity to do so.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Rust*, 17 F.3d at 160.  In *Coleman*, the Supreme Court held that if the decision of the last state court to which a habeas petitioner presented his federal claims fairly appeared to rest primarily on federal law, or to be interwoven with federal law, and did not clearly and expressly rely on an independent and adequate state

---

[3]Regarding these issues, it is in the interests of judicial economy to address the procedural default rather the merits of the claims.  *Lambrix*, 520 U.S. at 524-35.

23

ground, a federal court may address the petition.  *Id.* at 735.

The United States Court of Appeals for the Sixth Circuit employs a four-part test to determine whether a state procedural default bars federal habeas review. The inquiry is whether:

> (1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief.

*Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003) (citing *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir. 1998)); *see also Alexander v. Smith*, No. 06-1569, 2009 WL 426261 (6th Cir. Mich. Feb 20, 2009).

Here, the procedural rule relied upon by the state appellate courts to bar review of these issues was firmly established and regularly applied at the time of Petitioner's default.  Petitioner thus procedurally defaulted these habeas claims.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 753; *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  The cause and prejudice test should be applied to all occasions where a procedural default bars state litigation of a constitutional claim.  *Coleman*, 501 U.S. at 750.

Petitioner contends that his appellate counsel was ineffective in raising the claims in his direct appeal.  Petitioner also argues that the court's failure to review these claims would result in a fundamental miscarriage of justice.

24

To the extent that Petitioner attempts to establish cause to excuse his procedural default by claiming that his appellate counsel was ineffective for failing to raise his claims in his direct appeal, he does not do so.  Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland*, 466 U.S. at 687.

The mere failure to raise a claim, even if it is meritorious on appeal, does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a procedural default.  The United States Supreme Court, in *Smith v. Robbins*, 528 U.S. 259, 288 (2000), stated, among other things:

> In *Jones v. Barnes*, 463 U.S. 745 (1983) [parallel citations omitted], we held that appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent.  *See, e.g.*, *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*See also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (where claim was not "dead bang winner," the petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

In this case, the record reveals that various issues were raised in Petitioner's direct appeal, but that Petitioner's convictions were affirmed.  Petitioner fails to demonstrate that the issues allegedly ignored by his appellate counsel in his direct appeal were clearly stronger than those that were presented, and he has failed to

25

overcome the strong presumption that his counsel was competent.

Since Petitioner has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the "cause and prejudice" test. *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).

Petitioner has also not established that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); *Murray v. Carrier*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Here, Petitioner has made no such showing. His assertion that his habeas

claims have merit does not establish a miscarriage of justice. Petitioner's remaining claims are thus barred by procedural default and do not warrant federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United*

26

*States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).  In denying the habeas petition, the court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA.  *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336-37.  When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 U.S. at

27

484-85.  The court concludes that jurists of reason would not find the court's

assessment of the constitutional claims debatable or wrong, or that the court's ruling

regarding Petitioner's claims that are barred by procedural default is debatable.  The

court thus declines to issue Petitioner a certificate of appealability.

## V.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Petitioner's "Petition for Writ

of Habeas Corpus" [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of

appealability.

s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 29, 2009


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, October 29, 2009, by electronic and/or ordinary mail.

s/Felicia Moses for Lisa G. Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522